# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANGEL DANIEL SANTANA,** | ) CIVIL ACTION NO. 18-16 |
| Plaintiff, | ) |
| v. | ) |
| **A.L. RECOVERY, LLC,** | ) |
| Defendants. | ) |

## OPINION

### I.  Introduction

Pending before the court in the above-entitled action is a motion to compel arbitration and for a stay (ECF No. 23) filed by defendant A.L. Recovery, LLC ("A.L. Recovery"). Plaintiff Angel Daniel Santana ("Santana") opposes the motion to compel arbitration because A.L. Recovery was not a party to the arbitration agreement on which A.L. Recovery bases its motion to compel arbitration. For the reasons set forth in this opinion and on the record at the hearing held on August 1, 2018, it is ambiguous whether the claims Santana asserts against A.L. Recovery are within the scope of the arbitration agreement, which is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. The FAA's strong presumption of arbitrability, therefore, applies to this case and A.L. Recovery's motion to compel arbitration will be granted.

### II.  Procedural History

This case was initiated by Santana filing a complaint against A.L. Recovery and Drummond Financial Services, LLC ("Drummond") in the Court of Common Pleas of Allegheny County. (ECF No. 1-1.) Santana in the complaint asserts the following claims against the

following entities:

- **count I**—violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p against A.L. Recovery;

- **count 2**—violation of the Pennsylvania Uniform Commercial Code, 13 PA. CONS. STAT. § 9609(b)(2), against Drummond and A.L. Recovery;

- **count 3**—violations of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") 73 PA. CONS. STAT. §§ 2270.1-2270.5, against Drummond and A.L. Recovery;

- **count IV**—trespass under Pennsylvania common law against Drummond and A.L. Recovery;

- **count V**—invasion of privacy by intrusion upon seclusion under Pennsylvania common law against Drummond and A.L. Recovery; and

- **count VI**—conversion under Pennsylvania common law against Drummond and A.L. Recovery.

(ECF No. 1-1 ¶ 35-69.)

On January 4, 2018, Drummond and A.L. Recovery filed a notice of removal, based upon federal question jurisdiction, and the case was removed to this court. (ECF No. 1.) On January 11, 2018, Drummond filed a motion to compel arbitration. (ECF No. 2.) On January 19, 2018, A.L. Recovery filed a motion to join Drummond's motion to compel arbitration. (ECF No. 11.) On February 15, 2018, however, Drummond filed a notice of withdrawal of its motion to compel arbitration. (ECF No. 16.) On the same day, Santana filed a notice of voluntary dismissal of Drummond as a party to the case. (ECF No. 17.)

On February 16, 2018, the court granted Drummond's notice of withdrawal of the motion to compel arbitration. (ECF No. 19.) On the same day, the court denied without prejudice A.L. Recovery's motion to join Drummond's motion to compel arbitration. (ECF No. 20.) The denial of the motion to join was without prejudice to A.L. Recovery filing its own motion to compel arbitration. (Id.) On February 26, 2018, Drummond was removed as a party from the caption of the case. (ECF Nos. 21, 22.)

On March 2, 2018, A.L. Recovery filed a motion to compel arbitration and brief in support of the motion. (ECF Nos. 23, 24.) On March 29, 2018, Santana filed a response in opposition to the motion to compel arbitration. (ECF No. 27.) On August 1, 2018, the court held a hearing on the motion to compel arbitration. The court—after hearing from the parties and for the reasons set forth on the record—determined it would grant the motion to compel arbitration and set forth its reasoning in an opinion.

### III. Factual Background

#### A. Allegations in the Complaint

On May 23, 2017, Santana entered into a written agreement with Drummond, whereby Drummond agreed to use its best efforts to arrange a loan for Santana from Integrity Funding Ohio, LLC ("Integrity"). (ECF No. 1-1 ¶ 8.) Drummond successfully arranged a loan from Integrity secured by Santana's vehicle, a Dodge Charger ("vehicle"). (Id. ¶¶ 8-9.) Santana received a check in the amount of $3,000 from Integrity. (Id. ¶ 9.) Pursuant to the loan agreement, "Santana was to make four monthly payments in the amount of $838.48 starting on June 22, 2017 with a balloon payment in the amount of $3,923.48 due on October 20, 2017." (Id. ¶ 10.) "Santana allegedly defaulted on the loan." (Id. ¶ 11.)

According to Santana: Integrity assigned its rights, title, and interest under the loan agreement to Drummond; Drummond was, therefore, entitled to collect on the defaulted loan; and Drummond contracted with A.L. Recovery to repossess Santana's vehicle as collateral for the defaulted loan. (ECF No. 1-1 ¶¶ 12, 13.)

In the morning hours of August 21, 2017, A.L. Recovery's employee ("employee") entered Santana's driveway to repossess Santana's vehicle. (Id. ¶ 14.) Santana walked outside after noticing the employee backing into his driveway. (Id. ¶¶ 15-16.) When Santana asked the employee what he was doing, the employee responded that he was going to take the vehicle. (Id. ¶¶ 16-17.) Santana told the employee to get off his property, but the employee refused to leave.

3

(ECF No. 1-1 ¶¶ 18-19.) Santana opened the door to the vehicle so that he could get into the vehicle. (Id. ¶ 20.) The employee hooked his tow truck to the vehicle. (Id. ¶ 21.) Santana exited the vehicle and began arguing with the employee, and the employee called the police. (Id. ¶¶ 22-24.) When the police arrived and asked if there was a problem, Santana said no and, believing he had no choice, began to clean out his vehicle. (Id. ¶ 25.) Santana refused to surrender his key to the employee. (ECF No. 1-1 ¶ 26.) Santana then told the employee to be careful with the vehicle, and the employee responded, "whatever happens, happens." (Id. ¶ 27.)

About an hour after the vehicle was taken, Santana called an individual from A.L. Recovery to inform them about the incident. (Id. ¶ 28.) Santana stated that the employee was unprofessional and was told by Santana to get off his property. (Id.) The individual responded, "if that was the law, we wouldn't be able to take vehicles." (Id.)

According to Santana:

- A.L. Recovery acted as Drummond's agent, within the knowledge and direction of Drummond (ECF No. 1-1 ¶ 30);

- the actions of Drummond and A.L. Recovery were performed by their respective agents, officers, and employees within the scope of their actual or apparent authority (Id. ¶ 32);

- Drummond hired A.L. Recovery on a contingency basis, meaning A.L. Recovery would only get paid for an involuntary repossession where the vehicle is actually taken from the vehicle owner (Id. ¶ 33);

- the employee illegally repossessed his vehicle (Id. ¶ 28);

- the employee's breach of the peace terminated Drummond's right of possession of the car as collateral, and Drummond and A.L. Recovery had no right to take the car (Id. ¶ 46); and

- he is entitled to actual damages in the form of emotional distress, anxiety, and embarrassment, statutory and treble damages, attorney's fees and costs, and punitive damages (ECF No. 1-1 at 9.)

### B. Evidence Presented with Respect to the Motion to Compel Arbitration

In A.L. Recovery's memorandum of law in support of its motion to compel arbitration and to stay the proceedings pending arbitration, A.L. Recovery alleges that in connection with

obtaining the loan from Integrity, Santana executed a Credit Services Agreement ("CSO Agreement") with Drummond, which included an arbitration provision ("Arbitration Provision"). (ECF No. 24 at 2.) A.L. Recovery quotes portions of the CSO Agreement, including the Arbitration Provision, in its brief in support of its motion to compel arbitration. (ECF No. 24 at 2, 10-11.) Santana attached the CSO Agreement to its response in opposition to the motion to compel arbitration. (ECF No. 27-1.)

> The Arbitration Provision of the CSO Agreement provided, among other things:
>
> The CSO Agreement shall be governed by the laws of the State of Ohio, except that the Arbitration Provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.
> …
> This Arbitration Agreement describes when and how a Claim (as defined below) arising under or related to this CSO Agreement between you and Seller may be arbitrated.
> …
> As solely used in this Arbitration Agreement, the terms "we," "us" and "our" mean the Seller identified above, its parent companies, wholly or majority-owned subsidiaries, affiliates, commonly-owned companies, management companies, successors, assigns and any of their employees, officers and directors. For purposes of this Arbitration Provision, these terms also mean any third party providing any goods or services in connection with the origination, servicing or collection of the CSO Agreement (or any prior loan or loans we provided to Customer) if such third party is named as a party by Customer in any lawsuit between Customer and us. For purposes of this Arbitration Agreement, the words 'you' and 'your' mean each and every customer who signs the CSO Agreement.
> …
> "Claim" means any claim, dispute or controversy between you and us, whether preexisting, present or future, that in any way arises from or relates to the CSO Agreement, any prior loan or loans you obtained from us, the events leading up to the CSO agreement (for example, any disclosures, advertisements, promotions or oral or written statements made by us), or any product or service provided by us or third parties in connection with the CSO Agreement. 'Claim' has the broadest possible meaning….
> …
> Either you or we may elect to arbitrate a Claim by giving the other party written notice of the intent to arbitrate the Claim or by filing a motion to compel arbitration of the Claim. This notice may be given before or after a lawsuit has been filed concerning the Claim or with respect to other Claims brought later in the lawsuit, and it may be given by papers filed in the lawsuit.
> …

The CSO Agreement evidences a transaction involving interstate commerce and, therefore, this Arbitration Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), and not by any state arbitration law.

(ECF No. 27-1 at 2-3.)

IV. Standard of Review

A. General Applicability

In Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013), the court of appeals held that, depending on the circumstances, either the standard applied by Federal Rule of Civil Procedure 12(b)(6) or the standard applied by Federal Rule of Civil Procedure 56 could be applied to motions to compel arbitration. With respect to the Rule 12(b)(6) standard, the court explained:

> "[W]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or … documents relied upon in the complaint)," Somerset, 832 F.Supp.2d at 481, "the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery," id. at 482. That approach appropriately fosters the FAA's interest in speedy dispute resolution. In those circumstances, "[t]he question to be answered … becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis" for rejecting the affirmative defense. Leone v. Aetna Cas. & Sur. Co., 599 F.2d 566, 567 (3d Cir.1979).

Guidotti, 716 F.3d at 773-74. With respect to the Rule 56 standard, the court explained:

> [A] Rule 12(b)(6) standard is inappropriate when either "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity" to establish on its face that the parties agreed to arbitrate, Somerset, 832 F.Supp.2d at 482, or the opposing party has come forth with reliable evidence that is more than a "naked assertion … that it did not intend to be bound" by the arbitration agreement, even though on the face of the pleadings it appears that it did. ParKnit Mills, 636 F.2d at 55.
>
> Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record.
>
> The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the Rule 12(b)(6) standard is no longer

6

appropriate, and the issue should be judged under the Rule 56 standard. See id. (judging motion to compel arbitration under summary judgment standard where plaintiff presented "[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits").

Guidotti, 716 F.3d at 774.

A court, however, may consider a document that is not attached to a complaint in deciding a motion to compel arbitration under the Rule 12(b)(6) standard of review when the document is "integral to or explicitly relied upon in the complaint'" In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).[1] A document is "integral" to the complaint if the plaintiff has "relied upon these documents in framing the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted). A document is integral to the complaint if it, "by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" United States v. Savannah River Nuclear Solutions, LLC, Civ. Action No. 16-825, 2016 WL 7104823, at *6 (D.S.C. Dec. 6, 2016) (emphasis in original) (quoting Royster v. Gahler, 154 F. Supp. 3d 206, 227 (D. MD. 2015) (quoting Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F. Supp. 2d 602, 611 (D. Md. 2011)). In Savannah River, for example, the government referenced a management and operations contract ("M&O contract") in its complaint against Savannah River Nuclear Solutions, LLC ("SRNS"). Id. at *5. The court held that the M&O contract was integral to the complaint, because its existence gave "rise to the legal rights asserted by the Government against SRNS." Id. at *7. Without the contract, "the Government could not assert any of the six counts contained in the complaint against SRNS." Id. See Smith v. Hogan, 794 F.3d 249, 255 (2d

---

[1] The Third Circuit Court of Appeals explained that the main problem of looking to documents outside the complaint is the lack of notice to the plaintiff. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). The court of appeals explained, however, that when a plaintiff relied on a document without attaching it to the complaint, the plaintiff has actual notice of the document. Id. at 249.

Cir. 2015) (document with "no independent legal significance to [plaintiff's] claim" was not integral to complaint); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (document is integral to the complaint "where the complaint relies heavily upon its terms and effect" (internal quotation marks omitted)).

Here, both parties rely upon the CSO Agreement with respect to the motion to compel arbitration. Santana's claims in the complaint are based in part upon the CSO Agreement, i.e., the CSO Agreement gives rise to the legal claims between Santana and A.L. Recovery. A.L. Recovery quotes portions of the CSO Agreement in its brief in support of the motion to compel arbitration because the CSO Agreement contains the Arbitration Provision. Santana attached the CSO Agreement to its brief in opposition to the motion to compel arbitration. Under those circumstances, the CSO Agreement is integral to the complaint. The court, therefore, will consider the CSO Agreement to resolve the motion to compel arbitration under the Rule 12(b)(6) standard of review.

### B. The Rule 12(b)(6) Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for

relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.. . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

(Id.) (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

The Court of Appeals for the Third Circuit has instructed that "a court reviewing the sufficiency of a complaint must take three steps." Connelly v. Lane Constr, Corp., 809 F.3d 780, 876-87 (3d Cir. 2016). The court of appeals explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."(citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). A plaintiff must set forth "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the elements of the claim for relief. Connelly, 809 F.3d at 789; Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017).

V. Discussion

The FAA "was enacted in 1925 in response to widespread judicial hostility to arbitration

9

agreements." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). Section 2[2] of the FAA is the "'primary substantive provision of the Act,'" and reflects a "'liberal federal policy favoring arbitration'" and the "'fundamental principle that arbitration is a matter of contract.'" Id. (quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63 (2010)). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts…and enforce them according to their terms." AT&T Mobility, 563 U.S. at 339.

"[T]he threshold questions a district court must answer before compelling or enjoining arbitration are these: (1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998). "In conducting this limited review, the court must apply ordinary contractual principles, with a healthy regard for the strong federal policy in favor of arbitration." Id.; Moses H., 460 U.S. at 24-25. The Third Circuit Court of Appeals has suggested that while the presumption in favor of arbitration applies to the second question, it "probably does not apply to the first question." Century Indemnity Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 527 (3d Cir. 2009). This suggestion arises because "an arbitrator's authority derives solely from the parties' agreement to submit their disputes to arbitration[,]" and, therefore, "a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." Id. at 524. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for

---

[2] Section 2 of the FAA provides:
> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

arbitration." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000).

### A. Existence of a Valid Agreement

The CSO Agreement entered into between Santana and Drummond provides that the Arbitration Provision is governed by the FAA. (ECF No. 27-1.) Under the FAA,"[a] federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement." Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002). "When applying state law contract principles to arbitration agreements, courts look to the laws of the involved state or territory." Marotta v. Toll Bros., Inc., Civ. Action No. 09-2328, 2010 WL 744174, at *3 n.3 (E.D. Pa. Mar. 3, 2010) (citing Gay v. Creditinform, 511 F.3d 369, 388 (3d Cir. 2007)). Here, according to the complaint, Santana is a resident of Pennsylvania, A.L. Recovery is a Pennsylvania limited liability company located in Pennsylvania, and Santana and A.L. Recovery came into contact with each other at Santana's home in Pennsylvania. (ECF No. 1-1 ¶¶ 1, 3, 14.) Pennsylvania is, therefore, the state "involved" in this action.

> In Blair, the Third Circuit Court of Appeals noted:
>
> Before concluding that there is a valid contract under Pennsylvania law, the court must "look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration."

Id. (quoting ATACS Corp. v. Trans World Communications, Inc., 155 F.3d 659, 666 (3d Cir. 1998)). Although Santana and A.L. Recovery do not dispute that the CSO Agreement was a valid agreement entered into between Santana and Drummond, each of these issues will be addressed below.

#### 1. Manifestation of an Intention to be Bound

"In assessing intent, the object of inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior."

Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 582 (3d Cir. 2009) (citing Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 483 (Pa. Super. Ct. 1984)); see Cal. Sun Tanning USA, Inc. v. Elec. Beach, Inc., 369 F. App'x 340, 346 (3d Cir. 2010); 1 R. LORD, WILLISTON ON CONTRACTS § 4:1 (4th ed. 2007) ("In the formation of contracts…it was long ago settled that secret, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties."). Accordingly, "the inquiry will focus not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract." 1 R. LORD, WILLISTON ON CONTRACTS § 4:1 (4th ed. 2007).

Santana in the complaint alleges that he "entered into a written agreement with Drummond whereby Drummond agreed to use its best efforts to arrange a loan from Integrity[,]" and "Drummond was successful in arranging the loan with Integrity[.]" (ECF No. 1-1 at 5.) The CSO Agreement is signed by Santana and "Brittany Walker[.]" (ECF No. 27-1 at 4.) Because Drummond and Santana are listed as the parties to the CSO Agreement, it is a reasonable inference that "Brittany Walker" signed the agreement on behalf of Drummond. Under those circumstances, a reasonable person would find that Santana and Drummond manifested an intent to be bound by the CSO Agreement.

### 2. Sufficiently definite terms

"In Pennsylvania, '[a]n agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy.'" Soroko v. Atmos, Inc., No. CV 11-6120, 2015 WL 5585350, at *5 (E.D. Pa. Sept. 23, 2015) (quoting Peerless Publications, Inc. v. Cnty. of Montgomery, 656 A.2d 547, 552 (Pa. Commw. Ct. 1995)). "If a court is unable, due to indefiniteness or incompleteness in contracting, to determine whether the contract has been performed, then it must find that no contract existed

in the first place." Aircraft Guar. Corp. v. Strato-Lift, Inc., 103 F.Supp.2d 830, 836 (E.D. Pa. 2000) (citing Ingrassia Const. Co., Inc. v. Walsh, 486 A.2d 478, 484 (Pa. Super. Ct. 1984)).

Here, Santana does not argue that the Arbitration Provision should not be enforced because it lacks definiteness. The Arbitration Provision, which spans two full pages, addresses, among other things, the claims covered by the provision, the impact on the parties' rights to have their claims heard in a court of law, Santana's right to reject the provision, the applicable law, and details about the actual arbitration process.[3] The court is, therefore, satisfied that the terms of the Arbitration Provision are sufficiently definite and require Santana to arbitrate claims that fall within the scope of the Arbitration Provision.

### 3. Consideration

"Consideration 'confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise.'" Channel Home Centers v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986) (quoting Curry v. Thompson, 481 A.2d 658, 661 (Pa. Super. Ct. 1984)). "When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." Blair, 283 F.3d at 603. Here, the Arbitration Provision is supported by consideration because Santana and Drummond agreed to arbitrate, among other claims, claims relating to the CSO Agreement. (ECF No. 27-1 at 2.)

---

[3] These terms stand in stark contrast to the terms of the arbitration agreement in Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306 (6th Cir. 2000), which the court found were too indefinite to be enforced. As the Third Circuit Court of Appeals explained:
> In…[Floss], the court concluded that the arbitration agreement was illusory and unenforceable because the agreement gave the provider of the arbitration services the unlimited right to modify the arbitration rules without giving notice to the employee or gaining the employee's consent. The court held that " '[w]here a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement.' " Id. at 316 (quoting 1 Samuel Williston, Contracts § 43, at 140 (3d ed.1957)).

Blair, 283 F.3d at 604 (citing Floss, 211 F.3d at 316).

13

### 4. Conclusion

Based upon the foregoing, Santana and Drummond manifested their intent to be bound by the Arbitration Provision, the terms of the Arbitration Provision are sufficiently definite to be enforced, and consideration existed for their agreement.

### B. Disputes Covered by the Arbitration Provision

"Any inquiry into the scope of an arbitration clause must necessarily begin with the presumption that arbitration applies." In re Prudential Ins. Co. of Am. Litig., 133 F.3d 225, 231 (3d Cir. 1998). The Third Circuit Court of Appeals has explained:

> In determining whether the particular dispute falls within a valid arbitration agreement's scope, "there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Techs., 475 U.S. at 650, 106 S.Ct. at 1419 (internal quotation marks and citations omitted).

Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 524 (3d Cir. 2009). "[T]he presumption of arbitrability is relevant only where the scope of the arbitration clause is ambiguous." CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 174 n.7 (3d Cir. 2014) (citing Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 301 (2010)). In other words, "doubts in interpreting the precise scope of the arbitration agreement are to be resolved in favor or arbitration[,]" i.e., "genuine ambiguities [must be weighed] against the resisting party." Prudential, 133 F.3d at 231 (citing PaineWebber Inc. v. Hartmann, 921 F.2d 507, 512-13 (3d Cir. 1990)). "The language of a contract is ambiguous only 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" United Gov't Sec. Officers of Am., Int'l Union v. Exelon Nuclear Sec., LLC, 24 F. Supp. 3d 460, 468 (E.D. Pa. 2014) (quoting Regents of Mercersburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 172 (3d Cir. 2006)).

A.L. Recovery and Santana dispute whether A.L. Recovery is a party that may enforce

the Arbitration Provision against Santana, i.e., whether the claims Santana asserted against A.L. Recovery fall within the of the Arbitration Provision. The Arbitration Provision, in pertinent part, provides:

> For purposes of this Arbitration Agreement, these terms also mean any third party providing any goods or services in connection with the origination, servicing or collection of the CSO Agreement…if such third party is **named** as a party by Customer in any lawsuit between Customer and us.[4]

(ECF No. 27-1 at 2 (emphasis added).) This term of the Arbitration Provision is "reasonably susceptible of different constructions" with respect to *when* A.L. Recovery must be named in a lawsuit with Drummond in order for Santana's claims against A.L. Recovery to be subject to the

---

[4] At least one other court has enforced an arbitration agreement against a defendant who was not a party to the arbitration agreement because the defendant was specifically named in the arbitration agreement as a "related party" who could be sued for any claims related "in any way to Services request[ed] or provide[d]." Eaton v. Ad Astra Recovery Services, 80 F.Supp.3d 973, 975-76 (E.D. Mo. 2015).

Neither the court nor the parties, however, located any decision in which: (1) a motion to compel arbitration relied upon language similar to the language used in the Arbitration Provision; and (2) the defendant with whom the plaintiff agreed to arbitrate was voluntarily dismissed from the case prior to the third-party-defendant filing its motion to compel arbitration.

In Schiano v. MBNA, Civ. Action No. 05–1771 (JLL), 2012 WL 4103878, at *9 (D.N.J. Aug. 14, 2012), the plaintiffs sued a bank, with whom the plaintiffs agreed to arbitrate certain claims, and the bank's attorneys. The bank abandoned its rights to arbitrate the plaintiffs' claims, but the bank's attorneys filed a motion to compel arbitration against the plaintiffs. The arbitration agreement at issue provided that its terms covered third parties if the third parties were "named as a 'codefendant' in any 'claim' plaintiffs assert[ed] against [the bank]." Id. at *9. The plaintiffs argued that they should not be required to arbitrate their claims against the bank's attorneys because the bank would not be a codefendant in the arbitration with the bank's attorneys. Id. The court, however, found that the term was not ambiguous and explained:
> The contract language is unambiguous in stating that plaintiffs' claims against a third party shall be resolved by binding arbitration if such third party is named as a co-defendant in any claim asserted against MBNA/BOA. Nothing in the ordinary meaning of the words "claim" or "co-defendant" compels the conclusion that arbitration can proceed only if MBNA/BOA and the third-party debt collector are parties to the same arbitration, regardless of whether they are co-defendants in the same litigation. From the inception of this lawsuit, Pressler has been a co-defendant with MBNA/BOA. Accordingly, under the terms of the arbitration agreement, claims against third-party Pressler "shall be resolved by binding arbitration."

Id.

Arbitration Provision. Regents, 458 F.3d at 172. One interpretation of the term is that in order for Santana's claims against A.L. Recovery to be subject to the Arbitration Provision, A.L. Recovery must be named as a party to a lawsuit with Drummond *when the lawsuit was initiated*. Here, Santana named Drummond and A.L. Recovery as defendants when he initiated this lawsuit, and, thus, Santana's claims against A.L. Recovery may be covered by the Arbitration Provision. Another interpretation of the contract term, however, is that A.L. Recovery must be named as a party to a lawsuit with Drummond at the time A.L. Recovery files its motion to compel arbitration. At the time A.L. Recovery filed its motion to compel arbitration,[5] Drummond had been voluntarily dismissed from the case, i.e., A.L. Recovery was no longer named as a party in a lawsuit between Santana and Drummond.

Under those circumstances, the scope of the arbitration is ambiguous with respect to whether the dispute between Santana and A.L. Recovery falls within the scope of the Arbitration Provision. As discussed above, the court's inquiry into the scope of the Arbitration Provision begins with the presumption of arbitrability. Prudential, 133 F.3d at 231. Santana did not overcome the presumption of arbitrability to give the court "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[.]" Century Indemnity, 584 F.3d at 527 (quoting AT & T Techs., 475 U.S. at 650 (1986)). The motion to compel arbitration will, therefore, be granted.

VI. **Conclusion**

Based upon the court's review of the submissions of the parties, including the allegations of the complaint and the CSO Agreement, no party disputes that a valid agreement to arbitrate existed between Santana and Drummond, and the court concludes that the dispute between

---

[5] As A.L. Recovery noted on the record at the hearing on August 1, 2018, Drummond—while a named party to this case—filed a motion to compel arbitration, which A.L. Recovery attempted to join. The court, however, denied the motion for joinder once Drummond was voluntarily dismissed as a named party from this lawsuit.

Santana and A.L. Recovery falls within the scope of that agreement. A.L. Recovery's motion to compel arbitration and for a stay will, therefore, be granted. This case will be stayed[6] and administratively closed pending the completion of arbitration. An appropriate order will be entered. The Clerk shall mark this case closed.

BY THE COURT,

Dated: August 16, 2018

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge

---

[6] The Third Circuit Court of Appeals has explained:

> A court has the power to stay a proceeding if it determines that an issue falls under an applicable arbitration clause. 9 U.S.C. § 3. If one of the parties fails to comply with such an agreement, a court may order "the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

In re Mintze, 434 F.3d 222, 229 (3d Cir. 2006).